## LYMAN v. THOMPSON et al.

(Absent, JOHNSON, JUDGE).*

Decided November 1, 1877.

1. Where a decree is joint against two parties defendant, one of whom is not before the Court, but is an absent defendant, and the other has appeared and answered, the appellate court when the decree is erroneous will reverse the same as to both of such defendants.

2. A case in which a final decree was reversed, because a necessary party to a proper and full adjudication of the cause was not before the Court. See opinion of the Court in the cause.

Appeal from, and *supersedeas* to, a decree of the circuit court of Wirt county, rendered on the 20th of August 1870, in a chancery cause then in said court pending, wherein A. B. Lyman was plaintiff, and the said Thompson and wife and T. J. Christy were defendants, allowed upon the petition of the defendants Thompson and wife.

HAYMOND, JUDGE, who delivered the opinion of the Court, fully states the case.

Hon. George Loomis, who was at the time Judge of the circuit court of Wood county, rendered the decree complained of.·

*Okey Johnson* for appellant, prior to his election as one of the Judges of this court, filed the following brief:

1st. The court erred in decreeing that Isabel Thompson, the wife of John Thompson, should join in the deed

---
*Counsel in the cause.

with her husband for the land, and in default of her so doing to require a commissioner to make the deed on her behalf: *Clark* v. *Reins*, 12 Gratt. 98.

While Isabel Thompson could not appeal, she being proceeded against by order of publication, yet the error being a palpable one, and to the prejudice of her husband, John Thompson, the decree will be reversed as to both: *Purcell* v. *McCleary et al.* 10 Gratt. 246; *Lenows* v. *Lenow*, 8 Gratt. 349; *Kuhn, Nutter & Co.* v. *Mack & Brothers*, 4 West Va. 186: *Boggess's heirs* v. *Robinson's heirs*, 5 W. Va. 402.

2d. The court erred in decreeing a specific performance of the contract, and requiring a deed to be made in accordance therewith, as the proceedings and proof in the cause clearly show it was wholly without consideration and was procured by fraud, and should have been rescinded: *Rawlins* v. *Wickham*, 3 DeG. & J. 303; *Kerr on Frauds*, 61; *Hazzard* v. *Irwin*, 18 Pick. 95; *Balon* v. *Johnson*, 7 Johns. Ch. 194; *Rosevelt* v. *Fulton*, 2 Cow. 129; *Smith* v. *Richards*, 13 Pet. 20; *Mason* v. *Chappell*, 15 Gratt. 572; *Davis* v. *Henry*, 4 W. Va. 571.

It is not necessary that the false representation should have been the sole cause of the transaction; it is enough that it may have constituted *a material inducement*. If there has been a deception, no contract resting in any degree on that foundation can stand: Kerr on Frauds 75; *Rennell* v. *Sprye*, 1 DeG. M. & G. 708; *Shaw* v. *Stine*, 8 Bosworth 157; *Mason* v. *Crosby*, 1 Woodb. & M. 342; *Warren* v. *Daniels*, *ibid.* 90; *Smith* v. *Babcock*, 2 *id.* 246; *Laidlaw* v. *Organ*, 2 Wheat. 178; *Dickinson* v. *Railroad Company*, 7 W. Va. 390.

If the subject was so different from what it was represented as to amount to a failure of consideration, the contract will be rescinded: *Howland* v. *Norris*, 1 Cox 59; *Bartlett* v. *Salmon*, 6 DeG. M. & G. 41; *Veasey* v. *Doton*, 3 Allen 380.

*Here was a total failure of consideration.* Thompson relied upon the representations and did not examine for

himself. And he may be excused for so doing: *Mason*
v. *Crosby,* 1 Woodb. & M. 342; *Smith* v. *Babcock,* 2
id. 246; *Hall* v. *Thompson,* 1 S. & M. 443.

The circumstances were such as induced Thompson to rely upon the representations, made to him by W. H. Thompson and his confederates; and the contract should be rescinded, even if the means of information were open to him: *Mattock* v. *Todd,* 19 Ind. 130; *Johnson* v. *Taber,* 6 Seld. 319; *Gordon* v. *Parmelee,* 2 Allen 214.

The subject matter and relative knowledge of the parties should be considered. If the purchaser has not equal means of knowledge with the vendor, it is presumed he relied upon the representations; and if false, he should be relieved: *Picard* v. *McCormick,* 11 Mich. 68; *Hervey* v. *Smith,* 17 Ind. 272; *Nowland* v. *Cain,* 3 Allen 261; *Beard* v. *Campbell,* 1 A. K. Marsh. 125; *Narcissa* v. *Wathan,* 2 B. Mon. 241.

In order to establish fraud, it is not necessary that direct affirmative or positive proof be given. Like much of human knowledge on all subjects, *fraud may be inferred from facts that are established.* It is enough if facts be established, from which it would be impossible, upon a fair and reasonable conclusion, to say there was no fraud in the transaction.

Various facts and circumstances evince with unerring certainty the hidden purposes of the mind: *Llewellyn* v. *Mackworth,* 2 Atk. 40; *Villiers* v. *Villiers, ibid.* 71; *Man* v. *Ward, ibid.* 229; *East India Co.* v. *Donald,* 9 Ves. 282; *Stikeman* v. *Dawson,* 1 DeG. & Sm. 105; *Reed* v. *Nixon,* 48 Ill. 323; *Pope* v. *Andrews,* 1 S. & M. 135; *Danton* v. *McKenzie,* 1 Dessau. 289.

The misrepresentations being proved, and the fraudulent circumstances being shown, the burden of proof to show the transaction fair is shifted to the parties denying the fraud, and to escape the consequences they must show that the appellant, John Thompson, was well aware and cognizant of the real facts of the case, and the proof of such knowledge must be clear and conclusive: *Dyer*

v. *Hargrave*, 10 Ves. 505; *Shacketown* v. *Sutcliff*, 1 DeG. & Sm. 609; *Price* v. *Macauley*, 2 DeG. M. & G. 339; *Boyce* v. *Grundy*, 3 Pet. 210; *Clopton* v. *Cohart*, 3 S. & M. 363.

It cannot be pretended there is any such proof of knowledge on the part of Thompson.

3d. It is contended, that the foregoing authorities do not apply to a contract for the sale of a patent right. By all principles of equity and justice the withering finger of fraud taints, blasts and destroys everything that comes in contact with its polluting touch; and there is no difference in law or equity between a fraudulent contract for the sale of a swindling patent right, and a fraudulent sale of anything else. The courts of Virginia and our own State know no difference: *Mason* v. *Chappell*, 15 Gratt. 572; *Cady* v. *Gale*, 5 W. Va. 547.

4th. It is insisted that the fraud in this case is proved, and the Court should reverse the decree of the circuit court, and pronounce a decree denying specific performance and rescinding the contract; but if the Court has any doubt of the proof of fraud, the decree should be reversed and the cause remanded with instructions to direct an issue: *Douglas* v. *McChesney*, 2 Rand. 109; *Isler* v. *Grove*, 8 Gratt. 257; *Metterts, adm'r*, v. *Hogan*, 18 Gratt. 231; *Magill* v. *Manson*, 20 Gratt. 527; *Davis* v. *Henry*, 4 W. Va. 571.

*D. H. Leonard*, for appellees, cited:

*Vance* v. *Snyder*, 6 W. Va. 24; *Meadow* v. *Justin*, 6 W. Va. 198; *Ludington* v. *Renick*, 7 W. Va. 282; *Staughter's adm'r* v. *Gerson*, 13 Wall. 379, and authorities there cited; *Mason* v. *Chappell*, 15 Gratt. 572; *Olivant* v. *Bailey*, 48 E. C. L. R. 287; *Prideaux* v. *Bennett*, 1 J. S. Scott, N. S., 12 Am. R. 76; 7 Eng. Law and Eq. 254; Story on Agency 126.

HAYMOND, JUDGE, delivered the opinion of the Court:

The plaintiff commenced this suit in equity in the circuit court of Wirt county on the 26th day of May 1869,

and afterwards, on the first Monday in June 1869, at rules, an order of publication was awarded against all the defendants to the bill, viz: John Thompson, Isabel Thompson and Thomas J. Christy. The bill is filed to enforce the specific execution of an alleged agreement and contract in writing in the following words, viz: "For and in consideration of the sum of one dollar, ($1.00), to me in hand paid by Thomas J. Christy of Cincinnati, Ohio, the receipt whereof is hereby acknowledged, I, John Thompson, of Portsmouth, Ohio, do hereby agree and bind myself, my heirs, executors, administrators and assigns, to convey unto the said T. J. Christy, his assigns, by warranty deed with full covenants, all of that certain tract or parcel of land now belonging to me, consisting of five hundred acres of land, situated on Falling Timber run, in Wirt county, West Virginia, and will make said conveyance within ten days from date hereof. A diagram of said land is hereto attached.

In witness whereof I have hereunto set my hand and seal this 24th day of March, A. D. 1868.

"JOHN THOMPSON, [Seal.]
"Witness,              "ISABEL THOMPSON, [Seal.]"
    "W. H. ALLEN."

The diagram cannot be given here.
Upon said contract is the following writing, indorsed, viz:
            "PORTSMOUTH, March 30, 1868.

"Sixty days after date, I promise to pay to John Thompson, the sum of two hundred and fifty dollars, ($250.00), on the payment of which, the said Thompson agrees to deliver to Thomas J. Christy, a warranty deed to the five hundred acres of land described in the bond. In case the above-named amount of money is not paid promptly, the said Thompson is released from all obligation of making said deed.

            "THOMAS J. CHRISTY."

There is also written upon said contract the following,

viz: "In consideration of one dollar, ($1.00), to me in hand paid by A. B. Lyman, of Cincinnati, Ohio, I hereby assign, sell and convey to said Lyman, all my right, title and interest in and to the within contract, and I hereby authorize and instruct the within-named John Thompson and wife to make the deed for the land, named in said contract, to said A. B. Lyman, or his heirs, executors, administrators or assigns, and I hereby assume the payment of the sum of two hundred and fifty dollars, ($250.00), agreed to be paid by me as above, and to save said Lyman free and harmless from the payment of the same, and from all consequences of my non-payment of the same.

"Witness my hand and seal the 4th day of May 1868.

"T. J. Christy, [Seal.]"

The plaintiff's bill is as follows, viz:

"*To the Honorable George Loomis, Judge of the circuit court of Wirt county, West Virginia:*

"Humbly complaining, your orator, A. B. Lyman, the plaintiff, represents unto the court that John Thompson, on the 24th day of March 1868, was the owner in fee simple of a certain tract of land situated on the waters of Fallen Timber run, Wirt county, West Virginia, containing five hundred (500) acres, more fully described in a deed from W. C. Stewart, special commissioner, to said Thompson, bearing date November 14, 1867, and recorded in said county, in deed book number ten, page one hundred and eighty-eight, an official copy of which is herewith filed marked 'A,' and made a part hereof; and that the said John Thompson and Isabel his wife sold unto one Thomas J. Christy the said tract of land for a valuable consideration, and bound themselves, their heirs, executors, administrators and assigns to convey to the said Thomas J. Christy, or his assigns, the said tract of land by a warranty deed with full covenants, &c., within ten days from that date; all of which will more fully appear from an instrument in writing, executed by

the said John Thompson and Isabel Thompson his wife
(who are residents of the State of Ohio), bearing date on the said 24th day of March 1868; that there was, about the time the said agreement or writing was made, a note executed to said Thompson by said Christy for loaned money, whereby he bound himself to pay said Thompson two hundred and fifty dollars ($250.00), sixty days after date, and an indorsement made on the back of said agreement, that on the payment of the said note, he, the said Thompson, agreed to convey to said Christy, or his assigns, the said tract of land by a general warranty deed; but in case the said note was not promptly paid, then said Thompson would be relieved from all obligation of making said deed, which indorsement was made to secure the said Thompson in the prompt payment of said note.

" Your orator further represents that afterwards, to-wit: on the 4th day of May 1868, the said T. J. Christy, for value received, assigned and transferred the said contract or agreement to your orator, and directed that said Thompson and wife convey said tract of land to your orator, and agreed to pay said $250.00 note at its maturity, and save your orator harmless from any responsibility on said note; all of which will more fully and at large appear from said agreement and assignments thereon herewith filed, marked ' Exhibit B,' and made a part thereof.

" Your orator further represents, that ——, your orator, paid said note at its maturity, as will appear from said note herewith filed, marked ' Exhibit C,' and made a part hereof, and that your orator is entitled to a deed for said land, and that your orator has requested said Thompson and wife to make said deed, who have entirely failed and refused to make your orator a deed for the said tract of land, or any part thereof, although all the purchase money has long since been paid.

" In tender consideration whereof, and as your orator is remediless in the premises save in a court of equity,

where such matters are alone and properly cognizable, he prays that the said John Thompson and Isabel Thompson his wife, and Thomas J. Christy, be made parties defendant to this bill, and required to make a full, true and perfect answer thereto, and every allegation thereof, on their several oaths, and the premises being considered, your honor will render your orator a decree against said John Thompson and Isabel Thompson his wife for a deed for said land; and in case they fail to make said deed, that a commissioner be appointed to execute the same for them; and that your honor will grant your orator such other, further and general relief in the premises as the nature of his case may require, or to equity may seem meet," &c.

On the first Monday in July 1869 the defendant, John Thompson, filed his separate answer to plaintiffs' bill, which is as follows, viz:

" *To the Hon. George Loomis, Judge of the Circuit Court of Wirt County, West Virginia:*

" The separate answer of John Thompson to the bill against him and others by A. B. Lyman in the circuit court of said county. This respondent, reserving, &c., exceptions to the manifest errors, &c., to the bill of complainant, for answer thereto, or as much as he is advised is material for him to answer, says that it is true that this respondent and his wife did in the month of March 1868 enter into a contract, and execute a certain instrument of writing with Thomas J. Christy, and A. B. Lyman, the complainant, for the sale of a certain tract of land therein described, located in Wirt county, West Virginia; but the respondent denies that the facts in regard to the transaction as therein set forth are true, but, on the contrary avers the following to be a true statement of the matter:

"Sometime in the month of March 1868, one W. H. Thompson, an eastern man and a comparative stranger to respondent, called upon respondent at his residence

in Portsmouth, Ohio, and represented himself as the agent of J. W. Christy, T. J. Christy and A. B. Lyman for the sale of certain county and State rights in a certain patent right known as "D. C. Teller's patent steak-broiler and bread-toaster," and solicited respondent to purchase the right in certain counties in the state of Ohio; that respondent, who is a plain, simple man, and wholly unacquainted with such business, declined having anything to do with them; that shortly after, respondent and his wife happening to be in the city of Cincinnati, Ohio, met with said W. H. Thompson, Thomas J. Christy and A. B. Lyman, who again solicited your respondent to become a purchaser, and made representations of the great value of the invention, of its great usefulness and popularity as an article of domestic use, and exhibited certain notes for large sums of money, purporting to have been executed for the purchase of said patent right; that respondent, having faith in these men as gentlemen of truth and fair dealing, at last consented to trade a certain tract of land owned by him in Wirt county, West Virginia, for said patent right, and entered into and signed a certain instrument of writing, in the first page of Exhibit "B," filed with complainant's bill; that said Thomas J. Christy, A. B. Lyman and the said W. H. Thompson (who your respondent has since learned was a mere confidence man employed for the purpose of entrapping unsuspecting persons in their several schemes of swindling) were all present in the office of one W. H. Allen, when the said writing above mentioned, bearing date the 24th day of March 1868, was executed; that at the time of executing said writing, the said parties, T. J. Christy pretending to act as the attorney for one James W. Christy and A. B. Lyman, thereupon made an assignment to respondent of the patent right in said "steak-broiler and bread-toaster," in the counties of Sciota, Pike, Jackson, Gallia, Lawrence, Meigs, Vinton, Athens, Ross, Hocking, Washington, Fairfield, Muskingum, Noble, Monroe, Belmont

and Guernsey, represented and claimed by said parties to be worth $5,000.00, as will more fully appear from the assignment of said patent right, herewith filed marked "A," and prayed to be taken as part of this answer; that said instrument of writing, claimed by complainant as a title bond to the land in question, was drawn by the said W. H. Allen, the attorney of the said Christy and Lyman, and wholly with the view (as the respondent has since learned) to entrap him, as the consideration mentioned in said contract is stated to be $1.00, a mere nominal sum which was never paid, instead of the county rights to the patent aforesaid; that after respondent returned to his home, he proceeded in good faith to investigate the merits of the patent right and to dispose of the same, but respondent soon found that the said invention was wholly without merit, and so far from being the useful and popular article of domestic use, as represented by said Christy and Lyman, was a miserable humbug and a fraud and swindle, gotten up for the purpose of deceiving innocent and unsuspecting persons, and so far from being any advantage or profit to respondent, was wholly without value and great source of annoyance and expense; that respondent notified the said parties of the worthlessness of said patent right, and of his determination not to make said deed in consideration thereof, and respondent supposed that said parties had long since abandoned all claims upon him for the conveyance of said land mentioned in the instrument of writing aforesaid, until notified of this suit.

"This respondent further admits that it is true that said Thomas J. Christy did execute his note to respondent for the sum of $250.00, dated the 30th day of March 1868, as filed with complainant's bill; but respondent denies that said note was given for the consideration or any part of the consideration money for the purchase of said land; but, on the contrary, was for money loaned to said Christy, who came up to said respondent's home in the city of Portsmouth, and after repeated efforts pre-

vailed upon respondent to loan him, the said Christy, the sum of $250.00, to be paid in sixty days; that said loan was a wholly and an independent transaction, and had nothing whatever to do with the instrument of writing, dated Cincinnati, Ohio, on the 24th day of March 1868; that respondent let said Christy have said sum of $250.00, believing he was an honest man, and upon the faith of certain notes placed in the hands of respondent as collateral security and which were delivered up, and the said note of $250.00 was paid; that this respondent never was a party to the pretended note or writing purporting to have been drawn on the back of the instrument of writing, bearing date the 24th of March 1868, purporting to contain an agreement for the making of a deed for said land upon the payment of said note; that said note or writing is wholly in the hand-writing of said Thomas J. Christy, and was put upon the back of said agreement or contract aforesaid for the express purpose of carrying out the fraud, intended to be perpetrated upon respondent by said parties in the effort to obtain his land without valuable consideration.

"This respondent further states that so far from the said note of $250.00, being a consideration paid for the purchase of said tract of land, that after said contract of the 24th of March 1868 was made, and the assignment of the patent right aforesaid executed, said Thomas J. Christy came to Portsmouth to the house of the respondent, and made a demand upon said respondent for the taxes, which he said were due or might be due upon said land, and thereupon respondent paid him the sum of $25.00 on the 28th day of March 1868, as will be seen by the receipt of Thomas J. Christy, herewith filed marked " B."

"This respondent further states and so charges, that the assignment purporting to have been made on the back of the paper, dated the 24th day of March 1868, by said Thomas J. Christy to A. B. Lyman, is a mere sham; that said A. B. Lyman was a party to the whole trans-

action from the date of the drawing of the title bond set up by the complainant in his bill, and the execution of the assignment of the pretended patent right aforesaid to the present time; that the conditional memorandum on the back of said title bond, and the assignment of the same to said Lyman, is only a part of the same scheme, concocted to defraud respondent out of his land and that said Lyman cannot in truth or justice set up any claim to a conveyance of said land upon the ground of being an innocent purchaser for valuable consideration without notice; that said Lyman was a partner in the pretended patent right aforesaid, and when the trade was made he was present and directed by Thos. J. Christy to have the title bond made to him, the said Christy, and not in their joint name, which was only another part of the scheme to defraud respondent.

"This respondent further states and so charges, that the property mentioned in the title bond belonging to respondent is very valuable, containing five hundred acres of land, worth at least $3,500.00, and was purchased by respondent at public auction for the sum of $1,150.00, as shown by copy of deed filed by complainant and marked Exhibit "A ;" that it is not reasonable as claimed by complainant, that the respondent would dispose of the said land for the sum of $250.00, and take the unindorsed note of Thomas J. Christy in payment thereof. This respondent avers, that the whole transaction on the part of the complainant and those associated with him was a fraud upon respondent and wife, and prays this honorable court that the pretended title bond, dated March 24, 1868 and set up by complainant as the ground of his claim, may be set aside and declared null and void, having been obtained by fraud and deceit, and that the said Thomas J. Christy, A. B. Lyman, and all others claiming under or by virtue of their pretended title, may be forever restrained from further molestation of respondent by reason of the same. And, having answered, &c.,

respondent prays to be hence dismissed with his reasonable costs. "JOHN THOMPSON,

By Counsel.

"HUTCHINSON & STEED, Sols."

T. J. Christy filed his answer in the cause, I suppose at the hearing, as I see no order or entry of its being filed before that time. The answer of said Christy is as follows, viz:

"The separate answer of T. J. Christy to a Bill of Complaint exhibited in the Circuit Court of Wirt County against him, John Thompson and others by one A. B. Lyman:

"This respondent, saving and reserving to himself all benefit and advantage of exceptions to be had or taken to complainant's said bill of complaint, for answer thereto, or so much thereof as this respondent is advised is material or necessary for him to make answer unto, answering says, that John Thompson in March 1868 came to Cincinnati and called on this respondent and proposed to trade the tract of five hundred acres of land mentioned in complainant's bill to me for territory, in Ohio, in a certain patent right, which I was engaged in selling, called "D. C. Teller's patent steak-broiler and bread-toaster;" he recommended the land as being valuable timber land, and seemed anxious to make a trade, assigning as a reason that he had a son whom he wanted to set up in business, and thought that selling the patent steak-broiler and toaster would suit him and was a good business, and claimed that the said land was worth $5000.00. I knew nothing of him or the land, and told him to try one of the broilers and satisfy himself as to its utility; and after he had satisfied himself as to its utility, and I had made some inquiries about the land, we made a trade, I assigned him the right of eighteen counties in Ohio. I had sold and conveyed to complainant previous to that time one-third interest in the state of Ohio, and therefore he had to join me in the conveyance to Thompson, but had nothing to do with

the trade ; and as he did not want an interest in the land I agreed to give him other territory for it; and the agreement made by Thompson and wife and filed with complainant's bill as Exhibit " B," was made to me. On the 30th day of March 1868 I borrowed of Thompson $250.00, and executed my note to him payable in sixty days, and to secure to him the payment of said sum of money, I made the indorsements at the said Thompson's request on the back of said agreement, releasing him from making me a deed for said land unless the said money was paid promptly—he at the same time agreeing to deliver to me a warranty deed for the land as soon as the said sum of money was paid.   The said Thompson was present when I made the said memorandum, and I did so at his request and with his approval.   I. afterwards, on the 4th day of May 1868, assigned the said agreement to complainant, and he paid the $250.00 note at its maturity. The assignment was made for a valuable consideration, to-wit, $800.00, which I owed to said Lyman for services and money he had loaned to me and paid to my use; the whole transaction, both between Thompson and myself and the assignment to complainant, was fair, open and honest.   This respondent denies any fraud, conspiracy, or intention of fraud, on his part, or any misrepresentations or inducements held out to said Thompson, for the purpose of causing him to make said trade, and avers that the territory assigned to said Thompson was worth $250.00 per county, on an average; and this respondent could have sold said counties for a much greater sum of money than the land is worth.   This respondent acknowledges the truth of all statements contained in complainant's bill not herein denied.   And having fully answered, asks hence to be dismissed with his reasonable costs in this behalf expended; and he will ever pray," &c.

"THOMAS J. CHRISTY."

The plaintiff filed a special replication to the answer of defendant, John Thompson, which is as follows, viz:

" *To the Hon. George Loomis, Judge of the Circuit Court of Wirt County, West Va:*

" *The special replication of A. B. Lyman, to an answer of John Thompson in a certain suit in Chancery now depending in the Circuit Court of Wirt County, in which he is plaintiff and the said John Thompson and others are defendants:*

" This respondent, for special replication to said answer, saith that it is not true, as stated in said answer, that this respondent or T. J. Christy ever employed W. H. Thompson, as an agent or confidence man, to defraud the said John Thompson, or any one else, and denies that said W. H. Thompson was an eastern man, but, on the contrary thereof, the said W. H. Thompson was at the time a resident of the city of Portsmouth, in the state of Ohio, a fellow-townsman and neighbor of said defendant John Thompson, and was a tenant of said John Thompson; that said W. H. Thompson was comparatively a stranger to this respondent, and called at the office of respondent and T. J. Christy, and wanted an agency to sell some territory for the patent entitled, 'Teller's steak-broiler and bread-toaster,' in his part of the State, and informed said Christy that he was going up home to the city of Portsmouth, and thought he could make a sale of some territory; the said T. J. Christy told him if he could make a sale of some territory, or find a purchaser, he would pay him commission on the same. At that time, this respondent did not know, that there was any such man as the defendant, John Thompson, nor did the said Christy know anything about said John Thompson. This respondent denies, that there were any inducements held out to said John Thompson, by this respondent to get him to sell said tract of land in exchange for the patent, but avers that this respondent was at the time opposed to selling territory in said patent right for the land named: he would have nothing to do with the transaction with said John

Thompson, and the said T. J. Christy agreed with this respondent to give him territory in another part of the said state of Ohio for this respondent's interest in the counties sold said John Thompson, and said Christy took the contract in his own name. This respondent avers that said sale to John Thompson was a fair *bona fide* sale, after said John Thompson and wife had tested one of the beef-broilers and bread-toasters, and satisfied themselves of its value and utility.

"This respondent denies that he had any interest whatever in the land until after the assignment of T. J. Christy of the contract of sale of said land to this respondent; and after the said assignment of said contract, the said John Thompson faithfully promised to make to this respondent a deed of said land, so soon as the $250.00 note, executed to him by said T. J. Christy, was paid; and this respondent paid said note in full upon maturity, and said John Thompson never refused to convey said land to this respondent, until long after said note was paid to him; and when this respondent demanded the deed for said land, after he had paid said $250.00, he, the said John Thompson, refused to make a deed, contrary to his promise to this respondent, and demanded that this respondent pay him an additional sum of $225.00, which he claimed must be paid, before he would comply with his contract and make said deed; and at that time did not claim any fraud in the sale of the territory, and seemed satisfied with his purchase.

"This respondent admits that the indorsement on the back of said agreement, that said contract should be forfeited, unless the said $250.00 was paid, was made by T. J. Christy, but was done in the *presence* and at the request of said John Thompson, to secure him in the prompt payment of said sum of money, and said John Thompson then and there agreeing, that upon the payment of the same, he would make said deed of conveyance.

"This respondent denies all charges of fraud, conspiracy or intention of fraud in the transaction, and denies that

said patent right for the counties transferred to said defendant, John Thompson, was worthless; but, on the contrary thereof, said patent right for the counties transferred was at time worth $200.00 each, which is far more than the value of said tract of land, which is unimproved land, situated in the upper end of Wirt county, and is not worth more than $1.50 or $2.00 per acre, while the said John Thompson represented said land to be worth $5,000.00, which would be at the rate of $10.00 per acre. This respondent denies all allegations and statements in said answer, not herein admitted, and prays for the relief sought in his bill.

"A. B. LYMAN."

The said answers of defendants, Thompson and T. J. Christy, and also the said special replication, are verified by the affidavits of the parties respectively who made them. A large number of depositions were taken by plaintiff and defendant, John Thompson; and on the 20th day of August 1870 the court made and entered the following decree in the cause, viz: "This cause came on this 20th day of August 1870 to be heard upon the bill, exhibits and depositions filed therewith, and the answer of John Thompson and replication thereto, and the answer of T. J. Christy, filed, and proceedings had at rules, and was argued by counsel for complainant and defendants; on consideration whereof, the court is of opinion that the plaintiff is entitled to the relief prayed for in his bill. It is therefore adjudged, ordered and decreed that the defendants, John Thompson and Isabel Thompson, his wife, do make, stamp and file for record in the recorder's office of Wirt county, West Virginia, a good and sufficient deed, with covenants of general warranty, conveying the land mentioned in the bill to complainant, within sixty days from this date; and in case they make default in the same, that D. H. Leonard, who is hereby appointed a special commissioner for the purpose, do execute such a deed for and on behalf of said defendants, and that he be allowed the sum of $5.00, and

*1877.*
Special Term.

Lyman
v.
Thompson et al.

costs of necessary stamps, for making said deed.   And it
is further ordered that the defendants, John Thompson
and Isabel Thompson, do pay to complainant the costs
of this suit, and leave is granted to him to sue out exe-
cution for the same, and this cause being ended is ordered
to be left off the docket."

From this decree the defendants, John Thompson and
Isabel Thompson, his wife, have obtained an appeal to
this Court, and it is now to be determined whether there
is error therein, for which it should be reversed.  It may
be remarked that Isabel Thompson did not file her an-
swer, nor does it appear in the cause that she was ever
served with process in the cause, or that the order of
publication was ever duly executed as to her, nor does
the court ascertain any of these facts in its decree. If it can
be inferred from the decree that said Isabel was before
the court in the cause, it was by counsel at the hearing.
But I am not prepared to say that such inference is
authorized or proper.   It is immaterial in this cause,
whether Isabel Thompson could appeal from said decree
or not: for the defendant, John Thompson, having ap-
peared and answered, if the said decree was erroneous,
he had the right to appeal from it, the decree being a
joint one; and if erroneous, the appellate court will,
upon the appeal of the defendant, John Thompson, re-
verse the decree as to both: *Lenows* v. *Lenow*, 8 Gratt.
349.  If the appeal was dismissed as to said Isabel, it
would still be retained as to the defendant, John Thomp-
son, in this case.   It appears by the said deed of assign-
ment, referred to as Exhibit A, in the answer of the
defendant, John Thompson, and filed therewith, that the
defendant, Thomas J. Christy, executed the same for
James W. Christy, as his attorney, and that the same was
also executed by the plaintiff, Lyman.

The plaintiff had his deposition taken in his own be-
half, and filed in the cause; and in that deposition he
swears, that at the time the said patent right was assigned
to John Thompson, he owned one-third interest therein

in the state of Ohio, and James W. Christy the other two-thirds. This accounts for the deed of assignment having been executed by said T. J. Christy, as the attorney of James W. Christy. The plaintiff further swears that he bought said one-third interest from said T. J. Christy, as agent of D. C. Teller, the patentee, and that said James W. Christy became joint owner with him of said patent in the state of Ohio, he thinks, about February 1868; and that said T. J. Christy was authorized by him (plaintiff) to dispose of his interest; and that said T. J. Christy had no interest in said patent right in the counties named in the defendant, Thompson's, answer, after plaintiff's purchase and up to the time of the sale to defendant, Thompson. Plaintiff also swears, that the consideration for the assignment of the counties named in defendant, Thompson's, answer was the bond given by Thompson to T. J. Christy to convey five hundred acres of land; plaintiff also further swears, that the consideration, for which he executed said deed of assignment to Thompson, was the assurance that he should select six other counties in the State in lieu of his interest in the counties assigned. But it would seem that the counties never were selected by him. Plaintiff also states in his special replication to the answer of defendant, John Thompson, that he had no interest whatever in the land in controversy until after the assignment of T. J. Christy; plaintiff in his deposition also swears that he and James W. Christy were not partners in said patent right, but only joint owners in the proportions above stated, viz: James W. Christy two-thirds, and he, plaintiff, one-third of the state of Ohio.

So far as is now disclosed by the facts and evidence in the cause, T. J. Christy, in selling said patent right to the defendant, John Thompson, and taking the said contract for the land in his own name, was either acting as the agent of the plaintiff and James W. Christy, the owners, or as the agent of James W. Christy alone. This being so, said T. J. Christy would be regarded in

1877.
Special Term.

Lyman
v.
Thompson *et al.*

a court of equity with relation to said contract for said land as the trustee of his principal or principals; that is to say, the trustee of the plaintiff and James W. Christy, or of James W. Christy alone, as the fact may be. See Story's Eq. Pl. 7th ed. §231a; *Miller* v. *Whitaker* and *Young* v. *Miller*, 23 Ill. 435. It is clearly inferable from the evidence now taken in the cause, without further explanation, that said T. J. Christy was not only acting as the agent of James W. Christy altogether or in part, in making said sale to said John Thompson of said patent, and taking said contract in his own name, but that the plaintiff at the time said sale was made and said contract assigned to him by T. J. Christy, knew that said T. J. Christy in taking said contract to convey said land, did so as such agent, and that the consideration of said assignment by said T. J. Christy to plaintiff, was in part or altogether a personal private debt of T. J. Christy to plaintiff. Said T. J. Christy in his answer says it was in consideration of a debt of $800.00 which he owed plaintiff. There is no evidence in the record showing or tending to show (which I have been able to discover,) that said T. J. Christy became entitled to said contract for the conveyance of said land before, he assigned it to the plaintiff.

Although the answer of T. J. Christy has been filed in the cause, his deposition has not been taken. Under the state of circumstances as now disclosed in this case, the plaintiff Lyman filed his bill in this cause to compel a specific execution of the said contract of John Thompson and wife for the conveyance of said land, and asking that the conveyance be made to him. To this bill he made said Thompson and wife parties and T. J. Christy, but failed to make James W. Christy a party. The dedefendant John Thompson has prayed in his answer for a rescission of said contract for the conveyance of said land, for the reasons and causes stated in his said answer. In this state of the case without expressing or intending to express at this time any opinion upon the true merits

of the same, it seems to me that the circuit court erred in hearing and deciding the cause upon its merits without said James W. Christy having been made a party to the cause and brought before the court in a proper manner. See the said case before cited in 23 Ill. and sec. 231a of Story's Eq. Pl. It was also error in this case to decree a conveyance from the wife of said defendant John Thompson for said land, and for costs as the case now stands: *Clark et al.* v. *Reins,* 12 Gratt. 98, opinion of Judge Daniels delivered in the cause. But if the decree was otherwise right, perhaps this error might be remedied by correction in this Court, according to the view of Judge Daniels in the case last cited ; but under the view I have taken in the cause, this is now immaterial. It is not intended by what has been hereinbefore expressed by me to decide or determine anything in relation to said decree of the circuit court, or any matter or thing involved or arising thereon, except that, as the cause stands, the court erred in hearing and deciding said cause upon its merits without James W. Christy being made a party to the suit, and brought before the court in the cause in the proper manner; and that there should not have been a decree against the defendant, Isabel Thompson, the wife of said John Thompson, even though the decree was right in other respects.

First, because she was not before the court; and second, because, according to the showing of the bill, she was a *femme covert* at the time said contract was made. As the cause must be remanded to the circuit court, that said James W. Christy may be made a party to the cause by the plaintiff, by amended bill, the cause upon its merits in every respect is left open for future adjudication therein in the circuit court according to the principles and rules governing courts of equity.

It also seems to me, that the fraud complained of in the answer of said defendant, John Thompson, is somewhat vaguely and inartificially set out; and he perhaps if he desires a rescission of the contract, should offer, in

1877.
Special Term.

Lyman
v.
Thompson *et al.*

his answer, to re-convey said patent right so conveyed to him; but I do not determine now that the answer is insufficient in any aspect. But as these matters may, in the future consideration of the case, become important, it seems to me, in order that there may be a fair hearing and determination of the case according to its true merits, and to avoid unnecessary complications and questions, that the defendant, John Thompson, should have leave to file an amended answer, if he so desires, stating more clearly and distinctly his defense, to the matters alleged in the plaintiff's bill, and the reasons claimed by him why said contract should be rescinded, &c., especially as it seems to me it will produce no additional delay to the decision of the cause and may expedite its final decision.

For the foregoing reasons the decree of the circuit court of Wirt county, rendered in this cause on the 20th day of August 1870, must be reversed and annulled, and the appellants recover against the appellee, A. B. Lyman, their costs about this appeal in this Court expended; and the cause is remanded to the circuit court of the county of Wirt, with leave to the plaintiff, A. B. Lyman, to file an amended bill in this cause, making James W. Christy and such other persons parties thereto, as may be necessary to a proper and just determination thereof; and also with directions to the said circuit court to permit the defendant, John Thompson, to file an amended answer in the cause, if he shall ask so to do within such time as the said circuit court may deem reasonable, stating more clearly and distinctly his defense to the matters alleged in the plaintiff's bill and the causes claimed by him why said contract should be rescinded, &c.; and for such other and further proceedings to be had in the cause in and before said circuit court, as may be in accordance with the principles and rules governing courts of equity.

DECREE REVERSED and cause remanded.